Good morning, Your Honors. I'm Barry Bernstein. I represent Mr. Prasoprat. This case, I think, is basically a pure jurisdictional case, and it's a question of whether the Cornejo-Baretto v. Seifert rules that this Court's already just come out with apply to executive decisions as relates to an American citizen. The Cornejo case, in my reading, is a Mexican national opposing extradition back to his own country as a criminal fugitive in America. Well, your case is in a completely different posture than Cornejo-Baretto. Isn't that correct? I think so, yes. You filed your petition for rid of habeas corpus after the magistrate judge denied or granted extradition. Right. It made the necessary claim. And the Secretary has never, has never, has yet to decide whether to go ahead and go forward with the extradition. Isn't that right? Well, as far as we know, that's exactly where we haven't petitioned the Secretary yet. We're still trying to resolve it. As I understand it, the district court put a stay on all proceedings, or somebody put a stay on all proceedings. Basically, the real question from my point of view is this. So in Cornejo-Baretto, the Secretary had exercised discretion. Right. And then they instituted, you know, the second Cornejo case. The reality is. They were really reviewing the Secretary's decision to go forward. I agree. And we might eventually go through that posture. The question is. In Cornejo-1, we essentially said that until the Secretary finally made a final decision, you know, the relief you're seeking was somewhat premature. And if in fact we're going to have this, you know, we must exhaust the administrative remedy aspect of it, which is the way I interpret what the court's original decision is, that's what we're going to have to do. But back it up for a second. We're looking at something more fundamental than this. We're looking at what the judicial powers are as relates to an American citizen, and whether the judiciary has the right on an extradition proceedings concerning an American citizen, has the jurisdictional right to oversee on a constitutional basis the executive decisions. And do we have to wait until the end to get there? The executive hasn't made a decision yet to go ahead and finally go forward with extradition. My view of it is, is the second that the government files an extradition process, they've started that, that process. They're going to extradite him. The magistrate signed an extradition order. He's on his way. Now, do we run to the Secretary of State and beg, you know, that, hey, don't do it, and then come back here and say, gee, we think you have jurisdiction or not? Or do we start, and understand, one of the big keys to this, based on jurisdiction, is the fact that we ask for discovery. We have all these newspaper articles, and unless the court's willing to just accept that as reality, we have we have my client's feelings. He's facing the death penalty. We have the United Nations feelings. He's facing the matter of whether they accept it or not. The question is, you know, is that relevant to the decision a court can make? And that takes us back to the second Cornejo Brito case, which I still think, although it's a different posture, impacts on your case with the basic thrust of the second decision is that there's no judicial authority to review. Those kinds of considerations in an extradition proceeding. That's exactly the point I want to try to. That's exactly the point I want to come to. And the jurisdiction that the court has divested itself of jurisdiction on Cornejo in this type of situation as relates to foreign nationals being extradited to their own countries. And yes, I think point to something in Cornejo that makes a distinction between foreign nationals and U.S. Just the text itself. Background Mexican citizen who was subject of extradition demand. And he's going back to Mexico. All the treaties. That's what a treaty does. A treaty draw a distinction between an American citizen and a foreign national. No, no. That's that's that's what makes this such an interesting case. That's why this is this is in the posture it's in. The perspective of this is the executive branch can't sign a treaty from the from our perception that denies an American citizen either due process of law or subjects an American citizen to cruel and unusual punishment. And that and that's subject to judicial review. And it goes all the way back to Marbury versus Madison. Why are those why are those constitutional rights limited only to citizens? I thought they applied to anybody who was in this country. You're working. If you get a if you get a foreign national, say, you know, who's in prison in this country, they don't have that right against cruel and unusual punishment. As far as as their home country is concerned about their right while they're here. As far as as our enforcement of the law against them, they have that right. As far as their own government's enforcement of its laws against that citizen, the Cornejo case is determined that you have abrogated. What's the difference between then the foreign government's enforcement of their laws against a U.S. citizen? The difference is, is that the executive power by signing that treaty has stripped an American citizen of its rights or if, in fact, even worse than that, if at the time the treaty signed is not a problem and now the government like Thailand, like we assert Thailand has done, decides to go on a path of diversion from the time that existed and suddenly has a mandatory death penalty that summarily executed after conviction. And the executive branch says, hey, let's extradite him. And we're coming and saying, wait a minute. This man is being subjected to cruel and unusual punishment. And the judiciary has a right under the separation of powers doctrine to review the executive branch decision to send him to face that fate. And we should be entitled to the discovery that we requested so we can make a factual showing rather than saying, hey, take it on faith. But that goes back to whether, in fact, the judiciary has the jurisdiction to oversee the executive branch as relates to an American citizen. And I'm making that distinction. I'm saying that the rights between a foreign national and their own country is a matter of comedy and that it is properly vested in the executive branch. Any information you're going to get from the government is going to establish that there's some summary executions over in Thailand. Well, I want to I like to believe that the government is going to be truthful with us. And if, in fact, the United Nations mandate is sent a Human Rights Commission over there, that the government's not going to lie to us about it. You're in no position to develop your own sort of. Well, we've developed what we have as part of the court record. I'm sorry. The article. Yeah. Newspaper email. So how about the United Nations? They have any reports. We sent we've attached those exhibits to my memory. But that came off the Internet. Are there any experts in sort of the judicial system in Thailand or the penal system? I'm sure we could find one. But we didn't. My client has limited resources also. That's another impediment to this. But it goes back to the basics, really. If, in fact, we've made a showing that this is a probability. Does the court have the right to to investigate further? Does the court have the jurisdiction to get involved at all? That's the issue. And the issue is, is as for an American citizen. Yes, that's exactly the traditional role of the court from day one to to be the check and balance, to be the overseer of the executive branch and its decisions as it relates to an American citizen. And that's the distinction. And that's what we're asking you to do. Thank you. May it please the court. My name is Daniel Goodman. I represent the respondent, Michael Beno. Your Honor, I'd like to focus on the narrowest possible grounds for decision in this case. And I don't by doing so retreat from the other arguments in the brief. It's just that I have nothing to add to those arguments. Starting with the humanitarian claim. Your Honors, even if we assume the existence of the humanitarian exception to the rule of non-inquiry that's posited by the Second Circuit in the Galena case in 1960, this is not the case to deny extradition on that basis. And it's important to remember that the Galena dictum has never been used to refuse extradition. Not in Lopez Smith, not in Manero, not in Amami, not in Arne Bjorn's daughter, Mendler. All of which are Ninth Circuit cases which discuss the humanitarian exception, the possible existence of the humanitarian exception. Nor has the Galena dictum been used to deny extradition in any other case from any other circuit. And the reason that the Galena dictum should not be made real and utilized in this case is that once we realize that different countries have different legal and penal systems, it is not antithetical to a judicial sense of decency to recognize that the sovereign nation of Thailand, based on its own history and its own values and its own crime problem, has adopted the death penalty for a crime that in the United States would carry a mandatory minimum penalty of 10 years. And it's also important to remember, Your Honors, that the defense has not claimed that there is anything about this individual or about his crime that will result in a punishment or procedures any different from any other person charged with the exact same crime. What this is is a complete frontal assault on the extradition treaty between the United States and Thailand, at least as it relates to drugs. The second issue, Your Honor, is the issue of discovery. And before the magistrate judge, Mr. Prasoprat made a motion for discovery on the death penalty. The magistrate judge denied that motion because he stated correctly that Article VI of the extradition treaty between the United States and Thailand says that the United States can indeed refuse to extradite someone if he faces the death penalty if that penalty would not be available in the United States. But the authority within the United States that does that is explicitly stated as the executive authority, meaning the secretary of state. So the only question becomes whether Article VI... That's correct, Your Honor. That's correct. And the question for the judiciary would be whether that explicit delegation to the executive is unconstitutional. And it's not unconstitutional under the Eighth Amendment because the Eighth Amendment doesn't apply to foreign officials and the Eighth Amendment doesn't apply prior to conviction. It's not unconstitutional under the Due Process Clause because, in this case, the accused, Mr. Prasoprat, received all the process he was due. He has received the judicial hearing required by law, the habeas corpus hearing provided by law, and he has ahead of him the secretary of state's decision on his broader humanitarian claims. And that is the process that he is due. Your Honor, I'd like to briefly address some of the arguments that have been made here at oral argument by counsel for Mr. Prasoprat. Firstly, I completely disagree with the statement of the issue that was just made here at oral argument. The Cornejo-Baretto decision that recently came out, which I called Cornejo-Baretto II in my 28-J letter, came out before Mr. Prasoprat filed his brief. So the issue is not whether the Cornejo-Baretto decision has any effect, although I certainly agree that it is an important case. It's not the dispositive case because the rule of non-inquiry has existed long before the Cornejo-Baretto II decision came out. The rule doesn't arise from that case. It doesn't turn on that case. However, that case is important because it reaffirms resoundingly the rule of non-inquiry. It says it is well established. It's consistent with the extradition procedures, and it's based upon the separation of powers and an analysis of relative competences of different branches of government. With regard to the defense arguments here about U.S. versus foreign nationality, the government also disagrees that that has any significance. We have always disagreed with those claims. A person who is not a U.S. citizen, who is perhaps a permanent resident or a temporary resident, has all the same rights in extradition proceedings that a U.S. citizen has, and a person does not gain greater rights in extradition proceedings by virtue of his U.S. citizenship. That proposition has never been supported by any evidence, and certainly the magistrate judge and the district court, Judge Huck, rejected the argument that the American citizenship of Mr. Crossbrad made any difference to the decision at hand. Finally, with regard to the statement that was just made about there being a mandatory death penalty in Thailand, I'd like to briefly just discuss what the record says. On page 93 of the excerpts of record filed by Mr. Crossbrad, there is an exhibit, Exhibit J, which was part of the discovery motion. That exhibit is a bulletin from Amnesty International, and it says that the death penalty is mandatory in Thailand for the production or import of heroin. The death penalty is discretionary in Thailand for the possession of more than 100 grams of heroin. Let me ask this. Is it possible, because I've seen it the other way, is it possible for the secretary of state, for instance, in his decision to extradite a person to another country to put conditions on it, such as, for instance, that, well, the person not be subject to the death penalty? Because I know I know that's happened the other way around. It is absolutely possible. Those conditions can be utilized by the secretary of state. I don't believe that this treaty mentions that particular exception, but many treaties do. And certainly, whether the treaty mentions it or not, it is within the power of the secretary of state to impose conditions. Actually, I think this treaty may, in fact, mention such conditions. But the secretary of state most certainly can impose that condition or other conditions. But that's a matter, again, within the discretion of the executive. It is, Your Honor. It is. It is. So just to conclude on the question of whether the death penalty in Thailand would be mandatory or not for this, when the Mr. Prosecutor files his discovery motion, he says on what is, I believe, page 54 of the excerpt, he says, he misquotes, I'm sure inadvertently, I'm sure inadvertently, but he misquotes that language from the Amnesty International bulletin, and he says the death penalty is mandatory in Thailand for the possession of heroin, whereas we know from his own evidence that that is not the case. And unless the Court has any other questions, that will conclude my remarks. All right. Thank you. If the government is prepared to accept our exhibits, including Amnesty International, it makes my discovery request moot. But moving forward, the biggest problem we have is the fact that this is optional as far as the secretary of state. The facts of this case is Mr. Prasipat's the American end of a heroin importation conspiracy. Government could have prosecuted him here. Mr. Prasipat could have been facing 10 years here, and the case would have been over. Secretary of State exercised that option to his detriment and said, we're sending him back. We're sending him back. And so the fact that he's going to impose conditions as an option, there's nothing this Court can do to say this is what we demand that you do. It's really a light switch type of situation here. The Court has the authority to sit and review or not, and we feel that the Court does. Unless the Court has any other questions, though. Thank you. Thank you, Your Honor. The next matter is Moyni versus Antcraft. That's submitted.
judges: Pregerson, Tashima, Paez